```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                              :
In re                                         :    Chapter 11
                                              :
FRGR MANAGING MEMBER LLC,                     :    Case No. 09-11061 (MG)
                                              :
                    Debtor.                   :
                                              :
-----------------------------------------------------------x
```

# OPINION AND ORDER GRANTING MOTION OF U.S. TRUSTEE CONVERTING CASE TO A CASE UNDER CHAPTER 7

*A P P E A R A N C E S:*

BACKENROTH, FRANKEL & KRINSKY, LLP
*Attorneys for Debtor*
489 Fifth Avenue
28th Floor
New York, NY 10017
By:   Abraham J. Backenroth, Esq.

DIANA G. ADAMS
UNITED STATES TRUSTEE
33 Whitehall Street, 21st Floor
New York, NY 10004-2112
By:   Nazar Khodorovsky, Esq.
      Trial Attorney

SILVERMAN ACAMPORA LLP
*Attorneys for First Republic Group Realty LLP*
100 Jericho Quadrangle
Suite 300
Jericho, NY 11753
By:   Ronald J. Friedman, Esq.

KRAMER LEVIN NAFTALIS & FRANKEL, LLP
*Attorneys for Citigroup Global Markets Realty Corp.*
1177 Avenue of the Americas
New York, NY 100136
By:   Elise Scherr Frejka, Esq.

**MARTIN GLENN**
**United States Bankruptcy Judge**

FRGR Managing Member LLC ("FRGR" or "Debtor") filed this chapter 11 case on March 9, 2009. On October 9, 2009, the U.S. Trustee filed a motion to convert the case to a case under chapter 7, or in the alternative, to dismiss the case, pursuant to Bankruptcy Code § 1112(b). The Debtor opposes the motion. Two other parties support the motion to convert. For the reasons stated below, the U.S. Trustee's motion to convert the case to a case under chapter 7 is granted.

## BACKGROUND

The Debtor acknowledges that it originally filed this case in an effort to prevent Citigroup Global Markets Realty Corporation ("Citigroup") from foreclosing on its security for a $15 million mezzanine loan to the Debtor, secured by 100% of the Debtor's membership interest in First Republic Group Realty LLC ("First Republic Realty"), which in turn owns 11 shopping centers in the Southeast United States. Citigroup is also the mortgage lender to First Republic Realty, asserting a first mortgage lien in an amount in excess of $111 million secured by the 11 shopping centers.

On April 24, 2009, Judge Lifland, to whom this case was originally assigned, granted Citigroup's motion, lifting the automatic stay to permit Citigroup to exercise all of its rights and remedies as a secured creditor, including the right to hold a UCC foreclosure sale of FRGR's membership interest in First Republic Realty. (ECF # 40.) The same order also remanded to state court an action that First Republic Realty had earlier brought against Citigroup, and which the Debtor removed to federal court after the chapter 11 case was commenced. *Id.* After a temporary reprieve from the foreclosure

2

sale was obtained from and then vacated by the state court, on June 23, 2009, the UCC sale was conducted and the Debtor's sole asset, its 100% interest in First Republic Realty, was sold to Citigroup and assigned by it to one of its affiliates, Commercial Liquidation Property I, LLC.

It is undisputed that, after the foreclosure sale, Debtor has no operating assets or business. The Debtor's monthly operating reports for June, July and August 2009 reflect that Debtor had aggregate receipts of $0 and aggregate disbursements of $0. (*See* ECF # 52 and 57.) Additionally, the Debtor has no cash, no bank accounts, and no other liquid assets. According to the June monthly operating report, the Debtor's sole asset currently consists of "Claims arising from ownership of [First Republic Realty]," which claims have "Unliquidated Value." (ECF # 52.) The Debtor asserts that Citigroup's foreclosure sale was improper, and that the Debtor is entitled to set aside the sale, recover its interest in First Republic Realty, and recover damages as well.

FRGR's claims against Citigroup are, in fact, claims really being pressed by the Debtor's principal, Mark Stern. Indeed, this chapter 11 case, the adversary proceeding filed by the Debtor against Citigroup on October 23, 2009, *see FRGR Managing Member LLC v. Citigroup Global Markets Realty Corp., et al.*, No. 09-01542, and the related chapter 11 case filed by First Republic Realty, *see In re First Republic Group Realty LLC*, No. 09-13983, on June 22, 2009—the day before Citigroup acquired First Republic Realty in the foreclosure sale on June 23, 2009, after Judge Gonzalez denied First Republic Realty's motion to enjoin the sale—are all part of Stern's ongoing litigation warfare, not only with Citigroup but with other parties as well.[1] Many of the pending

---

[1] Once Citigroup acquired the ownership interest of First Republic Realty at the foreclosure sale, counsel who filed the First Republic Realty chapter 11 case and unsuccessfully sought injunctive relief was

claims in federal and state court are asserted against Stern individually. There are related cases currently pending in District Court for the Southern District of New York, before Judge Kaplan and Magistrate Judge Gorenstein, and in the Commercial Division of the New York Supreme Court, before Justice Lowe. A review of the docket sheets in these various cases clearly reveals that the claims, counterclaims, third-party claims and fourth-party claims, alleging numerous claims for fraud, breach of contract, and breach of fiduciary duty, are part of an extended and hard fought battle between Stern and others.

What has been apparent from the start of this case is that Stern caused the Debtor to commence this bankruptcy case and the First Republic Realty bankruptcy case as part of his broader litigation strategy in what is already protracted litigation in multiple forums. It is unmistakably clear that the FRGR chapter 11 case—on behalf of a Debtor with no operating assets, business or money—is being run by Mark Stern, for Mark Stern, without regard to the interests of the Debtor's estate. Indeed, Stern proclaims in a declaration in opposition to the motion to convert that he, personally, is funding the cost of the adversary proceeding filed in this case against Citigroup.[2] The Debtor is already administratively insolvent. And whether the Debtor's sole asset—its litigation claims against Citigroup—are worth anything, or at least anything approaching what the Debtor would need to recover to yield any value for Stern, is at best highly speculative.

---

replaced by new counsel who is not aligned with Mark Stern's or FRGR's interests. Indeed, Stern has moved to disqualify First Republic Realty's current bankruptcy counsel. First Republic Realty and Citigroup support the motion to convert the case to a case under chapter 7.

[2] First Republic Realty and Citigroup have responded to the Stern Declaration, contending that rather than Stern funding the litigation himself, it is being funded with funds properly belonging to First Republic Realty or Citigroup. Stern provided a further declaration denying these allegations. First Republic Realty and Citigroup attempted to provide further support for their allegations during the November 4, 2009 hearing. The Court declines to make any findings about this issue. The decision to grant the motion to convert the case to case under chapter 7 is not based on these allegations. The Court notes, however, that a chapter 7 trustee will have the ability to investigate these or any other allegations.

Additionally, serious allegations—none yet proven—have been made that Stern or FRGR misapplied funds properly belonging to First Republic Realty or to others, using these funds to fund the administration of this case. The Debtor's largest creditor is Citigroup; its other creditors are principally law firms that represented Debtor in the past. All creditors are entitled to a fair opportunity to recover on their claims, but engaging in litigation in multiple forums—unreviewed by a fiduciary whose primary obligation is to the estate and its creditors—is not the best way to achieve and maximize creditor recoveries.

In short, this is a case that cries out for an independent trustee to carefully evaluate the Debtor's claims or defenses, and to administer this estate that has no operating assets. At the November 4, 2009 hearing on the motion to convert, Citigroup's counsel represented that Citigroup would provide a chapter 7 trustee with up to $50,000 to fund the trustee's administration of this case and an investigation of the estate's claims and defenses. This funding will assure that a trustee can properly carry out his or her responsibilities, even though the estate has no other current assets. The alternative in these circumstances would be to dismiss this case and leave the parties to their state and district court remedies, without the supervision of a trustee or the bankruptcy court. The Court declines to do so now. A chapter 7 trustee can certainly move to dismiss the case subsequently, if the trustee concludes that such relief is in the best interests of the estate. Nothing in this opinion forecloses that possibility. As explained below, the law supports the U.S. Trustee's motion to convert the case to a case under chapter 7.

## DISCUSSION

### A. The Standard Under Bankruptcy Code § 1112(b)

Under Bankruptcy Code § 1112(b), a court can dismiss a chapter 11 case or convert it to case under chapter 7 "for cause" so long as it is in the best interests of both the creditors and the estate. 7 COLLIER ON BANKRUPTCY ¶ 1112.04 (16th ed. 2009). Subsection (b)(4) contains sixteen examples of events that may constitute cause. This list, however, is "not exhaustive" and courts are free to consider other factors. *See, e.g.*, *In re Ameribuild Const. Mgt., Inc.*, 399 B.R. 129, 131 n.3 (Bankr. S.D.N.Y. 2009) (citing legislative history). Courts may only grant motions under § 1112(b) after notice and a hearing.

The moving party has the burden of demonstrating cause for dismissal. *In re Loco Realty Corp.*, No. 09-11785 (AJG), 2009 WL 2883050, at *2 (Bankr. S.D.N.Y. June 25, 2009). Bankruptcy judges have wide discretion to determine whether cause exists to dismiss or convert a case under § 1112(b). *In re Kholyavka*, No. 08-10653DWS, 2008 WL 3887653, at *5 (Bankr. E.D. Pa. Aug. 20, 2008) (quoting H. Rep. 595, 95th Cong., 1st Sess. 405 (1977)).

Once a party establishes cause, a court must examine whether dismissal or conversion of a case to case under chapter 7 is in the best interests of the creditors and the estate. 7 COLLIER ON BANKRUPTCY ¶ 1112.04[6]. Courts have looked to multiple factors to determine which action is in the best interest of the creditors and the estate. Collier identifies ten such factors:

> (1) Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.

6

(2) Whether there would be a loss of rights granted in the case if it were dismissed rather than converted.

(3) Whether the debtor would simply file a further case upon dismissal.

(4) The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.

(5) In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.

(6) Whether any remaining issues would be better resolved outside the bankruptcy forum.

(7) Whether the estate consists of a "single asset."

(8) Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.

(9) Whether a plan has been confirmed and whether any property remains in the estate to be administered.

(10) Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*Id.*

### B. The U.S. Trustee Has Established Cause to Convert

The U.S. Trustee maintains that conversion or dismissal is appropriate because FRGR cannot feasibly reorganize. The U.S. Trustee relies on the fact that FRGR does not earn any income and that its sole asset (other than possible litigation claims) has been foreclosed upon. The U.S. Trustee also directs the Court to Bankruptcy Code § 1112(b)(4)(A), providing that cause exists to dismiss or convert a case where there is a substantial continuing loss to the estate and there is no reasonable likelihood of rehabilitation. FRGR responds, claiming that this analysis requires the Court to examine

the likelihood of success of its litigation claims against Citigroup to determine whether there is no reasonable likelihood of rehabilitation.

A party seeking to demonstrate cause under § 1112(b)(4)(A) must establish both the "substantial or continuing loss" prong as well as the "absence of a reasonable likelihood of rehabilitation." *See In re The 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007). As to the first prong, it is apparent from the facts (and FRGR does not dispute) that its actions are causing a diminution to the estate. FRGR continues to incur quarterly U.S. Trustee fees as well as legal fees, causing a continuing loss to the estate. As to the second prong, the vast majority of FRGR's brief is an attempt to demonstrate the likelihood of success in its litigation against Citigroup. Specifically, FRGR details both the procedural history as well as the factual findings in its state court action against Citigroup where the state court preliminarily concluded that FRGR had established a probability of success and likelihood of irreparable injury, entitling it to injunctive relief barring the foreclosure sale. But the preliminary injunction FRGR obtained was subsequently vacated by Justice Lowe (a result affirmed by the Appellate Division, First Department) when FRGR was unable to post the $5 million bond required by Justice Lowe to secure the injunction. FRGR argues that the preliminary findings of fact from the state court action supporting injunctive relief demonstrate "a reasonable likelihood of rehabilitation."

There is some support in the case law for FRGR's argument that the Court should evaluate the merits of the state court action. *In re Original IFPC Shareholders, Inc.*, 317 B.R. 738 (N.D. Ill. 2004), cited by both parties, dealt with a similar situation. There, the debtor was a corporation incorporated specifically to prosecute a trade secret dispute. A

party in interest moved to dismiss or convert the case. *Id.* at 741−42. The court analyzed the motion under § 1112(b)(1), the substantially similar precursor to the current § 1112(b)(4)(A). The court initially concluded that the first prong was satisfied, noting the loss caused by the debtor's continuing operation. *Id.* at 742. But, turning to the second prong, the court felt determining whether "a reasonable likelihood of rehabilitation" existed required the court to probe the probability of success of the lawsuit because the company's future revenues would flow from the outcome of a single lawsuit. *See id.* at 742–43. The court noted that the debtors had already attempted, and failed, to prove the merits of their claims to two previous tribunals. Giving this factual history "considerable weight," the court determined that there was no reasonable likelihood of rehabilitation. *Id.* But most cases reject the need to evaluate the merits of a debtor's litigation claims in deciding whether to dismiss or convert a chapter 11 case.

In *In re Ameribuild Const. Mgt., Inc.*, 399 B.R. 129, Judge Gropper recently granted a creditor's motion to convert a case from chapter 11 to case under chapter 7. As in this case, the main asset of the debtor in *Ameribuild*—which had no ongoing business—was a lawsuit brought by the debtor against a creditor. In opposing the motion to convert, the debtor argued that it should be allowed to proceed with its chapter 11 case because the debtor's lawsuit was meritorious and a recovery by the debtor would enable the debtor to repay its creditors. The decision granting the motion to convert does not cite any specific section of § 1112(b)(4) as the basis for its decision, but instead quotes the well established principle that "[w]hen it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous." *Id.* at

9

132 (quoting *C-TC 9th Ave. P'ship. v. Norton Co. (In re C-TC 9th Ave. P'ship.)*, 113 F.3d 1304, 1310 (2d Cir. 1997)).

With respect to the pending lawsuit, Judge Gropper stated:

> This Court again emphasizes that in order to grant the motion to convert it need not and does not determine the merits of the dispute between Roth [debtor's principal] and Schumer [the creditor]. Nevertheless, it is patently obvious that the creditors would benefit from the appointment of a Chapter 7 trustee as an independent fiduciary. A fiduciary would be able to prosecute claims against Schumer, if they exist. An independent fiduciary would also be able to examine the transactions between Roth and the Debtor.

399 B.R. at 134.

This case likewise cries out for an independent fiduciary to examine the transactions between Stern, FRGR, First Republic Realty and Citigroup (and others) and determine what, if any, claims should be pursued, by whom and against whom.

Other cases addressing whether a debtor should be permitted to maintain a chapter 11 case to pursue a lawsuit, as Debtor attempts here, severely undermine FRGR's argument. These cases assail the ability of a chapter 11 debtor to reorganize when the sole or main asset is a litigation claim, dismissing or converting bankruptcy cases without fully probing the merits of the underlying litigation claims. The reasoning of these cases is grounded in historical 11 U.S.C. § 1112(b)(2), which established "inability to effectuate a plan" as cause to warrant dismissal or conversion. While this explicit ground for cause has been eliminated in the updated statute, Collier observes that it is still applicable where a party ostensibly filed a chapter 11 case to reorganize, "but has no reasonable prospects of confirming a plan." 7 COLLIER ON BANKRUPTCY ¶ 1112.04[5][b]. Indeed, other courts have held that the inability to effectuate a plan remains grounds for

dismissal or conversion after the 2005 amendments to the Bankruptcy Code. *See In re Local Union 722 Int'l Bhd. of Teamsters*, 414 B.R. 443, 451–52 (Bankr. N.D. Ill. 2009) ("Relief may be granted under § 1112(b) if debtor can not effectuate a reorganization plan.") (citation omitted); *In re Repository Technologies, Inc.*, 363 B.R. 868, 896 (Bankr. N.D. Ill. 2007) ("Inability to effectuate a Plan in Chapter 11 is certainly a basis for dismissal."). *See also In re Roma Group, Inc.*, 165 B.R. 779, 780−81 (S.D.N.Y. 1994) (questioning whether a court should credit contingent lawsuits as sufficient assets to complete a plan of reorganization).

Several decisions in the Eastern District of Pennsylvania have analyzed the effect of pending litigation claims on whether chapter 11 cases should be converted or dismissed. In *In re Edwards*, No. 95-18405 DWS, 1996 WL 407253, at *7 (Bankr. E.D. Pa. June 17, 1996), a bankruptcy court used reasoning announced in a district court opinion, *Thompson v. Kramer (In re Richard R. Thompson)*, No. Civ.A. 92-7461, 1995 WL 358135, at *3–4 (E.D. Pa. June 9, 1995), as the basis for dismissing a chapter 11 case. In *Thompson*, the district court upheld a bankruptcy court's determination that the proposal to fund a reorganization plan out of the proceeds of a pending litigation was not a feasible way of completing a plan.

The *Edwards* bankruptcy court analyzed the argument that the plan proponent would use the proceeds from a lawsuit and the sale of a residential property to fund a plan of reorganization. *Id.* at *4. The property, however, was encumbered by numerous liens, essentially making the debtor's only asset an interest in a lawsuit. *See id.* Finding the *Kramer* decision persuasive, the *Edwards* court reiterated the standard *Kramer* used (quoting from an earlier Western District of Pennsylvania case, *Moody v. Security Pacific*

*Bus. Credit Inc.*, 85 B.R. 319, 345 (W.D. Pa. 1988), *vacated on other grounds*, 858 F.2d 137 (3d Cir. 1988)), to determine whether a plan is feasible:

> In general, courts look to what capital and other actual assets a debtor possesses which can be used in his Plan of Reorganization, however, potential recovery from a lawsuit is insufficient to create a reasonable likelihood of rehabilitation. *In the Matter of Imperial Heights Apts., Ltd.,* 18 B.R. 858 (Bankr. S.D. Ohio 1982). Since there is no way to establish the feasibility of a plan which is to be funded solely from the possibility of a lawsuit, bankruptcy courts will convert or dismiss such Chapter 11 cases. *In the Matter of Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir.1985).[3]

*Moody*, 85 B.R. at 345.

Applying the *Moody* standard to the facts in *Edwards*, the court reasoned that while the claims within the estate were "substantial," any success on the claims would likely be far away and hotly contested. *Edwards*, 1996 WL 407253, at *5. The court concluded that there was "no reasonable possibility of a successful reorganization within a reasonable time" and dismissed the case. *Id.* at *5–7.

Other courts have come to the same conclusion as *Edwards* when faced with plans of reorganization funded almost exclusively from lawsuits. *See, e.g.*, *In re Rey*, No. 04 B 35040, 2006 WL 2457435, at *7–8 (Bankr. N.D. Ill. Aug. 21, 2006) (court converted a chapter 11 case to a case under chapter 7 based upon the debtor's inability to fund a plan, where the debtor had few real assets other than numerous potential litigation claims, reasoning that "[t]o confirm a plan, a debtor's income projections must be based on concrete evidence and not be speculative or conjectural . . . . A lawsuit's outcome,

---

[3] *Winshall* has been overturned to the extent it held that an individual debtor is not permitted to file under chapter 11. *See In re Charfoos*, 979 F.2d 390, 393 (6th Cir. 1992) (observing the Supreme Court's decision in *Toibb v. Radloff*, 501 U.S. 157 (1991), overruled *Winshall* to the extent it prohibited the filing of chapter 11 cases by individuals). *Winshall*, however, remains good law for other purposes. *See, e.g.*, *C-TC 9th Ave.*, 113 F.3d at 1308 (citing *Winshall* with approval).

though, is always speculative. Without a solid basis for believing litigation is highly likely to generate large sums of money quickly, it cannot provide a sufficiently reliable source of income to support confirmation.") (internal quotations and citations omitted); *In re Maggaro*, 84 B.R. 803, 805 (Bankr. M.D. Fl. 1988) (granting motion to dismiss chapter 11 case where debtor's only asset that could fund reorganization was a potential lawsuit, reasoning that it has been "well recognized" that any plan proposed to be funded with proceeds from pending litigation is "not feasible" and warrants dismissal); *In re Bendig*, 74 B.R. 47, 48 (Bankr. D. Conn. 1987) (dismissing case where debtor proposed to fund a reorganization plan with income from a future job debtor had yet to obtain, as well as with monies from a malpractice action against former attorneys, reasoning that dismissal was warranted because, *inter alia*, the lawsuit was "too ephemeral" of an asset to fund a plan of reorganization); *In re Bock*, 58 B.R. 374, 379 (Bankr. M.D. Fl. 1986) (dismissing chapter 11 case where debtor had no assets save a lawsuit against a former employer, reasoning that there was no way for the debtor to establish the feasibility of the plan where it would be funded solely from a lawsuit); *In re Imperial Heights Apartments, Ltd.*, 18 B.R. 858, 863–64 (Bankr. S.D. Ohio 1982) (finding, without fully probing possible success of the lawsuit, that the "absence of an economic entity reflect[ed] . . . upon the reasonable likelihood of [the estate's] rehabilitation").

      Applying the case law to this case the Court concludes that FRGR cannot confirm a plan of reorganization in a timely fashion based solely upon its litigation claims against Citigroup, whatever the ultimate merits of its claims. FRGR is correct that the mere fact that it is not engaged in an ongoing business is not alone a basis to grant the U.S. Trustee's motion. (*See* FRGR Opp. at 18–19.) However, the Debtor's argument does not

address its inability to otherwise fund a plan of reorganization. Nor does the Debtor address the possibility of ever completing a plan, with the possible exception of winning its litigation against Citigroup. Even if the Court could accept as true—which it does not—that FRGR may eventually be successful in its lawsuit, this still does not support denying the motion to convert the case to a case under chapter 7. The *Edwards* court, dealing with a similar situation, acknowledged that the claims that would be used to fund the plan were complex and the litigation would be "long and hotly contested." *Edwards*, 1996 WL 407253, at *5. The court there determined that the motion to dismiss or convert should be granted because any reorganization would not occur in a reasonable time. *Id.* at *5. The same is true here.

FRGR admits in its moving papers that the "litigation in the various cases has been difficult, time consuming and protracted." (FRGR Opp. at 2.) Furthermore, in this case it is clear that the litigation against Citigroup, whatever its merits, is being conducted for the benefit of Mark Stern. An independent trustee, whose sole duty is to the estate and its creditors, is needed to decide whether the litigation should be pursued and whether the Debtor has claims against Citigroup or others from whom recoveries for the benefit of the estate and the creditors can be obtained. *See Ameribuild Constr. Mgmt., Inc.*, 399 B.R. at 134 ("Nevertheless, it is patently obvious that the creditors would benefit from the appointment of a Chapter 7 trustee as an independent fiduciary.").

The Debtor's counsel responded during argument that, while opposing the U.S. Trustee's motion, if cause is found under § 1112(b), the case should be dismissed rather than converted to a case under chapter 7. Where there are few if any assets to administer, and the estate appears to be administratively insolvent, dismissal would often be the

better course. In this case, however, where Stern appears to be acting in his own personal interest rather than the interests of the estate and its creditors, and allegations—so far unproven—of misapplication of the Debtor's and First Republic Realty's funds have been made, the Court believes that the better course is the conversion of this case to a case under chapter 7. In light of Citigroup's agreement to fund the activities of a chapter 7 trustee up to the amount of $50,000, there will be ample funds to support the efforts of a trustee and the trustee's professionals. If the trustee later concludes that dismissal is in the best interests of the estate and its creditors, the trustee can make that motion. If the trustee believes that the claims against Citigroup (or others) have merit and should be pursued, the trustee will be able to prosecute the litigation.

## CONCLUSION

For the foregoing reasons, the U.S. Trustee's motion to convert the case to a case under chapter 7 is **GRANTED.**

**IT IS SO ORDERED.**

DATED: November 16, 2009
New York, New York

          **/s/Martin Glenn**
MARTIN GLENN
United States Bankruptcy Judge